UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO 1:18-cv-24407-UU

MARCELO PENA, FRANK EIDENBRAND,
JAMES LEBOWITZ, JOSHUA ELSER, AND
CRAIG CUNNINGHAM
individually and on behalf of all others
similarly situated,

CLASS ACTION

*Plaintiff*,

JURY TRIAL DEMANDED

v.

JOHN C. HEATH, ATTORNEY AT LAW,
PLLC D/B/A LEXINGTON LAW FIRM.,

*Defendant*,

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Marcelo Pena ("Pena"), Frank Eisenband ("Eisenband"), James Lebowitz ("Lebowitz"), Joshua Elser ("Elser"), Craig Cunningham ("Cunningham") (hereinafter collectivly referred to as "Plaintiffs") with the consent of Defendant John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law firm, ("Lexington" or "Defendant"), respectfully request the entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

## I.    INTRODUCTION

The Settlement Agreement makes $11,450,863 available to the settlement class. Each Settlement Class Member who submits a timely, valid claim shall be eligible to participate in a benefit. In addition, Lexington will pay the following, subject to approval by the Court: (1) An award

---

[1] The Agreement is attached as **Exhibit A**. All capitalized terms used herein have the same definitions as those defined in the Agreement.

38836611

of Attorney's Fees and Costs not to exceed \$1,450,000; (2) Service Awards not to exceed \$2,500 per each class representative[2]; (3) and notice and administration Costs not to exceed \$257,000.

    If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation across numerous cases centered on unsettled legal questions.

    This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

3. Approval of the Settlement Administrator;

4. Approval of the Notice program describing:

    a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

    b. The proposed Release of claims;

    c. Class Counsel's request for attorneys' fees and expenses, as well a Service Award for the Class Representative; and

    d. The procedure for opting-out of or objecting to the Settlement

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

    The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Scott Edelsberg ¶ 2, attached hereto as **Exhibit B**. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in discovery and extensive arm's-length negotiations cut across a multitude of lawsuits filed in different jurisdictions, before they were ultimately consolidated in this this Action. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Edelsberg Decl. ¶ 3.

    For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

---

[2] There are 5 proposed Class Representatives so the total Service Award sought would not exceed \$12,500.

## II.    BACKGROUND

On October 23, 2018, Plaintiff Marcelo Pena filed litigation against Defendant before this Honorable Court, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages.  [ECF No. 1]. Defendant filed its answer on November 14, 2018 and this case was referred to mediation by order of December 28, 2018.  Plaintiff Pena is represented by Andrew Shamis of Shamis & Gentile P.A., Scott Edelsberg of Edelsberg Law, and Manuel S. Hiraldo of Hiraldo P.A.

Previously, on May 12, 2017, Plaintiff Frank Eisenband filed litigaion against Defendant in the United States District Court District of New Jersey, Case Number 3:2017cv03404, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. Defendant filed its answer on June 9, 2017.  Plaintiff Eisenband is represented by Stephen DeNittis and Ross Schmierer of DeNittis Osefchen Prince, P.C., and Manuel S. Hiraldo of Hiraldo P.A.

On May 26, 2017, Plaintiff James Lebowitz filed litigation against Defendant in the United States Court District of Massachussets, Case number 1:17-cv-10973-RGS, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages.  This case was transferred to the District of New Jersey on April 30, 2018. Plaintiff  Lebowitz is represented by Abbas Kazerounian and Ryan L. McBride of Kazerouni Law Group, Joshua B. Swigart of Hyde & Swigart, and Stephen DeNittis and Ross Schmierer of DeNittis Osefchen Prince, P.C .

On June 1, 2017, Plaintiff Craig Cunninghan filed litigation against Defendant in the United States Court District of Utah, Case 1:2017cv00087, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages.. Plaintiff Cunningham is represented by Todd Friedman and Adrian Bacon of the Law Offices of Todd M. Friedman, P.C.

On July 12, 2017, Plaintiff Joshua Elser filed litigation against Defendant in the United States Court Middle District of Florida, Case 5:17-cv-00326-BJD-PRL, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages.  Defendant filed its answer on September 11, 2017. Plaintiff Elser is represented by Andrew Shamis of Shamis & Gentile, P.A. and Manuel S. Hiraldo of Hiraldo P.A.

On November 13, 2017 and December 1, 2017, all parties attended two full days of mediation before Hunter R. Hughes in Atlanta, Georgia. At the end of the mediation, Plaintiffs were under the belief that a class-wide settlement had in fact been reached pusuant to a term sheet drafted at the mediation. Defendant, however, disagreed that a full settlement had in fact been reached and all cases continued through the litigation path until April 13, 2018, when Plaintiffs filed a motion seeking enforcement of the settlement allegedly reached at the initial

3

mediation. This Motion was filed on behalf of all parties by Plaintiff Elser in the Middle District of Florida, Case 5:17-cv-00326-BJD-PRL.

Before the Court in the *Elser* matter issued a final ruling on Plainitffs' Motion to Enforce Settlement, all parties attended a third full day mediation with the Hon. Jay C. Ghandi (Ret.) of JAMS on December 14, 2018. After a few more months of intense negotiations, all parties finally agreed to a class-wide settlement and fully executed a term sheet reflecting the same on March 29, 2019. Finally, on April 8, 2019, all Plaintiffs filed a consolidated complaint before this Honrable Court, [ECF No. 21], in order to effecuate settlement and have this Court hold juridiction over the settlement and all cases involved therein.

### III.   SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

#### a.   The Settlement Class

The proposed Settlement establishes two discrete Settlement Classes, defined as follows:

> **CLASS 1**: All persons in the United States: (1) who received a telephone call and/or text message from July 12, 2013 to the date of preliminary approval based on the information gathered by one or more of the following third-party lead generators- RTK Media, Inc., Capital Leads LLC, Fluent, LLC and Credit Sesame, and (2) the telephone call or text message in (1) resulted in a telephone conversation with a representative of Lexington or a text message that referenced "Lexington Law ."

> **CLASS 2**: All persons in the United States: (1) who had a telephone conversation with a representative of Lexington, from July 12, 2013 to the date of preliminary approval, wherein the Lexington Representative obtained a copy of such person's credit report, (2) who did not sign up for Lexington's credit repair services on that phone call, and (3) who did not opt-out of receiving text messages from Lexington.

Agreement Section I.GG. Excluded from the Settlement Class are: (i) the district judge and magistrate judge presiding over this case, their spouses, and persons within the third degree of relationship to either of them; (2) individuals who are or were during the Class Period agents, directors, employees, officers, or servants of Lexington or of any affiliate or parent of Lexington; (3) Plaintiff's counsel and their employees, and (4) all persons who file a timely and proper request to be excluded from the Settlement Class.

4

**b.   Settlement Consideration**

Pursuant to the Settlement, Defendant has agreed to make up to $11,450,863 available for the benefit of Settlement Class Members ("Settlement Fund"). In addition, Defendant will pay the following, subject to approval by the Court: (1) An award of Attorney's Fees and Expenses not to exceed $1,450,000; (2) Service Awards not to exceed $2,500 per each class representative[3]; (3) and administration Costs not to exceed $257,000

**c.   The Notice Program**

Pending this Court's approval, KCC, Inc., will serve as the Notice Administrator, and will be responsible for administrating the Notice Program.   KCC, Inc. is a nationally-prominent Notice Adminsitrator with experience in thousands of settlement.   The Notice Program consists of three different components: (1) Email Notice (2) Postcard Notice; and (3) Publication Notice. Agreement at IV.B. The forms of the proposed E-Mailed Notice and Postcard Notices agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as exhibits.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents.

**i.   E-Mail Notice**

Defendant possess emails for over eighty percent of the Settlement Class members. Therefore, the primary form of notice shall be E-Mail Notice. A copy of the Email Notice is attached to the Settlement Agreement as Exhibit 2. Individuals who receive E-Mail Notice will have the option of visiting the Settlement Website (www. LexLawTCPAsettlement.com) to download and file a Claim Form.   Agreement at IV.C.   Email notices will be sent to all persons in the Settlement Classes who may reasonably be identified and as to whom Defendant has an email address associated with the telephone number and/or account. Emails sent shall have a "return receipt" or other such function that permits KCC to reasonably determine whether e-mails have been delivered and/or opened. Emails shall have a hyperlink that class member recipients may click and me taken to a landing page on the

---

[3] There are 5 proposed Class Representatives so the total Service Award sought would not exceed $12,500.

settlement website.  Each class member will be provided a unique class member identifier on the notice which will be used to access the claim form.

### ii.  Postcard Notice

For persons in the Settlement Classes for which email is not available, Lexington will first determine whether it has a mailing address associated with the telephone and/or account number, and KCC will send postcard notice to those persons. For those persons for whom Lexington has not located a mailing address, KCC will conduct a reverse lookup by telephone number to determine the person's mailing address and then send postcard notice to those persons.  A copy of the Postcard notice is attached as Exhibit 5 to the Settlement Agreement.

Mail Notice and Email Notice will all contain the address for the Settlement Website, www.LexLawTCPAsettlement.com. On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the Mail Notice and Email Notice.  A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit 3.  Further, The Long Form Notice will be sent to all Settlement Class members who contact the Settlement Administrator by telephone or email and request a copy.  Agreement at I.V.

### iii.  Notice By Publication

Both parties have agreed to develop a media campaign with KCC that will produce and place internet banners, purchasing 13,316,000 advertisement views targeting Adults 18+ on desktop and mobile devices via the Google Display Network. The cost of such media campaign shall be included in the maximum cost of administration cap of $257,000.

### iv.  Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. Agreement at IV.B.4. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. *Id*. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement agreement, the operative complaint, the Postcard Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Lexington agree to post or that the Court orders be posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval. *Id*.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries. *Id*.

### d. **Claims Process**

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily make a claim to their portion of the Settlement Fund. Edelsberg Decl. ¶ 4.

Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness.  A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 1.  Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) by which Lexington and/or a third party lead generator allegedly contacted the Settlement Class member; (4) an affirmation under penalty of perjury, that the Settlement Class Member received one or more telephone calls and/or text messages from Lexington and/or a third party lead generator to the Settlement Class Member's cellular telephone on or after July 12, 2013, through the date the Preliminary Approval Order is entered in this matter, and the Settlement Class member either did not give prior express consent to be called or the Settlement Class Member claims that the prior written express consent was not contextually sufficient to initiate a telemarketing sales call; (5) for emailed or mailed claim forms, the settlement Class Member's signature; and (6) for Claim Forms submitted via the Settlement Website, the Settlement Class Member's electronic signature.

Only one valid claim form will be honored per Settlement Class member, regardless of the number of calls or text messages the Settlement Class Member received.  Lexington shall have the right to review and research the submitted claim forms and to suggest denial of claims if Lexington has a good faith belief that such claims are improper or fraudulent. Any suggestion of denial of claims shall be provided to Class Counsel in writing. If the Parties cannot agree upon which claims should be denied, then they shall submit the issue to the Court for determination at final approval.

Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to automatically receive a cash payment.  In the event a Claim Form is deficient, in that information is missing, inaccurate, or doesn't match up to a telephone number that received a text message from Defendant, the Claims Administrator will attempt to contact the Settlement Class member and the Settlement Class member will have another opportunity to submit a valid Claim Form. Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Claim Settlement Payment.  If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and

their claims will be released. Claim Forms can be submitted until 15 days following the Final Approval Order.

### e. Allocation of the Settlement Fund Payments

Each Settlement Class member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check of $6.15.  Settlement Class Claimants will be sent their Claim Settlement Payments to the address they submitted on their Claim Form within 30 days following the Effective Date. Agreement at IV.F.1.

### f. Settlement Administrator

Pending this Court's approval, KCC, Inc., shall serve as the Settlement Administrator.  The Settlement Administrator's responsibilities may include:

   i. obtaining from Class Counsel and Defendant cellular telephone information, and to the extent it is available, name, email, and address information, for Settlement Class members;

   ii. performing reverse telephone number look-ups by cellular telephone number to determine available associated physical addresses that might exist for any Settlement Class members for whom the Parties do not have email addresses, and verifying and updating the addresses received through the National Change of Address database, for the purpose of providing Mailed Notice;

   iii. providing email Notice;

   iv. providing postcard Notice to Settlement Class members;

   v. establishing and maintaining the Settlement website;

   vi. establishing and maintaining a post office box for requests for exclusion from the Settlement Class;

   vii. receiving, evaluating, and processing Claim Forms;

   viii. advising Settlement Class members if their Claim Forms are deficient;

   ix. providing weekly reports about the Notice plan and number and identity of opt-outs (if any) to Class Counsel and Lexington's counsel;

   x. establishing and maintaining an automated and toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries;

   xi. responding to any Settlement Class member inquiries;

   xii. processing all requests for exclusion from the Settlement Class;

xiii.   at Class Counsel's request in advance of the Final Approval Hearing, preparing an declaration to submit to the Court that identifies each Settlement Class member who timely and properly requested exclusion from the Settlement Class;

xiv.   distributing Settlement Fund Payments.

### g. Opt-Out and Objection Procedures

Settlement Class members who do not wish to participate in the Settlement may individually opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 30 days prior to the Final Approval Hearing. The Settlement Administrator will communicate any opt-out requests to Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than 30 days prior to the Final Approval Hearing.  Pending Court approval, for an objection to be considered by the Court, it must include the following in writing:

a.   the name of the Actions;

b.   the objector's full name, address, and telephone number;

c.   an explanation of the basis on which the objector claims to be a Settlement Class Member;

d.   all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.   the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling on the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.   a copy of any orders related to or ruling on counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial

and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years the objector's counsel;

h.  any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

i.  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l.  the objector's signature (an attorney's signature is not sufficient).

Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of this Agreement by appeal or other means.

Agreement at IV.E.2.

### h.  Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, have agreed to a release as follows:

Plaintiffs and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns, household members, and any persons acting on their behalf, will be deemed to have fully released and forever discharged: (1) Lexington, and each and all of its present, former and future direct and indirect parent companies, affiliates, subsidiaries, agents, successors, independent contractors and/or predecessors in interest and all of the aforementioneds' respective officers, directors, employees, attorneys, shareholders, agents, vendors and assigns; and (2) Progrexion ASG, Inc., Progrexion Teleservices, Inc., Progrexion Marketing, Inc. and each and all of their present, former and future direct and indirect parent companies, affiliates, subsidiaries, agents, successors, independent contractors and/or predecessors in interest and all of the aforementioneds' respective officers, directors,

employees, attorneys, shareholders, agents, vendors and assigns (collectively with the parties identified in subpart No. 1, the "Released Parties") from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of preliminary approval that arise out of or are related in any way to the actual or alleged use by Lexington, or its current or prior representatives, agents or affiliates, of an artificial or prerecorded voice, predictive dialer and/or of any automatic telephone dialing system (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., relevant regulatory or administrative promulgations and case law) to place calls to cellular telephones or any telephones for which the called party is charged, including, but not limited to, claims under or for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and any other state or federal statutory or analogous common law claim (including, but not limited to, state laws and invasion of privacy) arising from the use of automatic telephone dialing systems, predictive dialer and/or an artificial or prerecorded voice (the "Released Claims") which have accrued on or before through the date of Final Approval.

Without limiting the foregoing, the Released Claims specifically extend to claims that Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement and the releases contained therein become effective. This Paragraph constitutes a waiver of, without limitation as to any other applicable law, Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and the Settlement Class Members understand and acknowledge the significance of the waiver of California Civil Code Section 1542 and/or any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases. In connection with such waivers and

relinquishment, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

### i.    Covenants, Representations, and Warranties

Plaintiffs and the Settlement Class Members covenant and agree: (a) not to assert any of the Released Claims in any action or proceeding and not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action or proceeding based on any of the Released Claims against any of the Released Parties; (b) not to organize or solicit the participation of Settlement Class Members in a separate class for purposes of pursuing any action or proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending or future action or proceeding) based on or relating to any of the Released Claims or the facts and circumstances relating thereto against the Released Parties; and (c) that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Released Parties.

Plaintiffs represent and warrants that: (a) they are the sole and exclusive owner of their own Released Claims; (b) that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties; (c) that they will not assign or otherwise transfer any interest in any of the Released Claims; and (d) that they have no surviving claim or cause of action against any of the Released Parties that is not being released by this Agreement.

Class Counsel represent and warrant that: (a) they know of no other persons with claims against Lexington who are not included in the Settlement Classes and whose claims will not be released upon the Effective Date of this Agreement; (b) they will keep confidential and not publicly disclose, disseminate, or use any of the information in the Settlement Class Data; and (c) they will not advertise for or solicit individuals to bring any additional lawsuits or claims against the Released Parties.

The scope of the release by all Class Members (other than those who exclude themselves from the Settlement) is narrowly tailored to only cover those actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character, arising out of, relating to, or in connection with automated calls made and text messages sent to Class Members

cellular telephones and the Released Parties within the Class Period.  Agreement at VI.  The scope of release also covers any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands arising out of the administration of this settlement.

### j.   Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendant has agreed not to oppose Class Counsel's request for attorneys' fees and expenses of up to $1,450,000. Defendant has also agreed not to oppose an application for a Service Award for each named Plaintiff up to $2,500.00. Agreement at III.D.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.  Counsel requests that a deadline to file a Motion for Attorneys Fees and Costs be filed thirty days before the claims deadline.

### k.   CAFA Notice

The Defendant shall serve notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, within the timelines specified by 28 U.S.C. § 1715(b). Defendant will provide the Court with confirmation of service on or before the date of the Final Approval Hearing.

### IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.   The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."  *Id*. (citations omitted).  In the second step, after notice to settlement class members and time

and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

A proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

The Court should take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for Preliminary Approval.

### b.  The Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Edelsberg Decl. ¶ 5.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. Defendant argues that Plaintiffs' claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously. Edelsberg Decl. ¶ 6.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review. Edelsberg Decl. ¶ 7.

**c.** **The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[4] *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

This settlement was reached by experienced counsel on both sides following discovery and three separate non-collusive negotiations facilitated by Hunter Hughes and Hon. Jay C. Gandhi (Ret.). As such, the settlement is entitled to a presumption of fairness. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380. *See also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"; *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 *McLaughlin on Class Actions* § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added)."); and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive."). Said negotiation was hard fought and resulted in a substantial benefit of up to $11,450,863 to the class members. Thus, there can be no dispute that the Settlement was reached through non-collusive arm's length negotiations by the Parties. *See Liberman*, 73 F.R.D. at 535.

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Edelsberg Decl. ¶ 8. Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

Edelsberg Decl. ¶ 9.  Class Counsel zealously represented their clients throughout the litigation via five separate class action lawsuits before consolidation, and throughout the discovery process, which included review of numerous pages of documents and electronic data. Edelsberg Decl. ¶ 10.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Edelsberg Decl. ¶ 9.  As detailed above, Class Counsel conducted a thorough analysis of Plaintiffs' claims and engaged in extensive discovery with Lexington and third parties.  *Id.* ¶ 11. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### d. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### i. Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiffs' case, but they are also pragmatic in their awareness of the various defenses available to Lexington, and the risks inherent in trial and post-judgment appeal. Edelsberg Decl. ¶ 12. The success of Plaintiffs' claims, turn on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal.  Further, it still remains unclear whether Plaintiffs would be able to certify a class for resolution of the asserted claims at trial.  Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Edelsberg Decl. ¶ 13.

Even if Plaintiffs and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members, without further delay.

### ii. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $11,450,863 made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to various Motions to Stay filed by Defendant, Lexington's assertion of individualized issues, including the raising of dispute-resolution procedures, such as arbitration and class-action waivers, a potential motion for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment.

There can be no doubt that this Settlement is a fair and reasonable recovery for the in light of Lexington's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Edelsberg Decl. ¶ 14.

### iii. Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Edelsberg Decl. ¶ 15.

### iv. Stage of Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached only after discovery in 5 separate matters, including the production and review of documents and electronic data produced by Lexington and third parties. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. Edelsberg Decl. ¶ 16.

### e.   Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph GG of the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 1,861,929  individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Lexington's marketing

telephone calls and text messages – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiffs are typical of absent Settlement Class members because they received Lexington calls and/or texts and claim to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Edelsberg Decl. ¶ 9. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

**f.** **The Court Should Approve the Proposed Notice Program**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information). One District Court in the 11th Circuit found that "email notice, post card notice, and other forms of class notice are reasonable, adequate and sufficient notice to the class members and meet the requirements of due process." *Family Med. Pharm., LLC v. Trxade Grp., Inc.*, 2016 U.S. Dist. LEXIS 153272 (S.D. AL 2016). Other Courts around the country have found these forms of notice to be sufficient. See *Aikens v. Mortg. Default Servs.*, LLC, 2018 U.S. Dist. LEXIS 153084 (W.D. WA 2018); see also *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014); see also *Manner v. Gucci Am., Inc.*, 2016 U.S. Dist. LEXIS 34224 (S.D. CA 2016).

The Notice program satisfies all of these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Specifically, the Parties will provide direct notice via email to over 80% of the class and via postcard to a large portion of the remaining Settlement Class Members. Furthermore, the Parties will provide notice by publication through a media campaign that will achieve 13,316,000 views. Additionally, the Parties, through the Settlement Administrator, will maintain a Settlement Website for Class Members to Visit. Finally, the Settlement Administrator will maintain a toll-free Settlement hotline for potential Class Members to call for information. The Parties have provided multiple avenues for Class Members to make claims and

obtain information about the Settlement. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

### V.        Proposed Schedule of Events

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Deadline for Completion of Mailed Notice Program | 60 days after Preliminary Approval |
| Deadline for the Email Notice Program | 60 days after Preliminary Approval |
| Deadline for filing papers in support of Final Approval of the Settlement | 30 days prior to the Final Approval Hearing |
| Class Counsel's application for an award of attorneys' fees and expenses | 30 days prior to the Final Approval Hearing |
| Deadline for opting-out of Settlement and submission of objections | 30 days prior to the Final Approval Hearing |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 90 days after Preliminary Approval |
| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 15 days after the Final Approval Hearing |

Dated: May 3, 2019

Respectfully submitted,

**EDELSBERG LAW, PA**

/s/ Scott Edelsberg
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**HIRALDO P.A.**

/s/ Manuel S. Hiraldo
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
(t) 954.400.4713

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(t) (305) 479-2299
(f) (786) 623-0915

22

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CETIFY that on May 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Manuel S. Hiraldo*
Florida Bar No. 030380
*Counsel for Plaintiff*