**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO 1:18-cv-24407-UU

MARCELO PENA,                                         **CLASS ACTION**
individually and on behalf of all others similarly
situated,

                                                      **JURY TRIAL DEMANDED**
*Plaintiff*,

v.

JOHN C. HEATH, ATTORNEY AT LAW, PLLC
D/B/A LEXINGTON LAW FIRM.,

*Defendant*,

_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND
APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES, AND COSTS**

Plaintiffs James Lebowitz, Frank Eisenband, Joshua Elser, Marcelo Pena, and Craig Cunningham ("Plaintiffs") initiated this action against John C. Heath, Attorney at Law, PLLC, d/b/a Lexington Law Firm, ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that they were called by Defendant with an autodialer without Plaintiffs' permission and sent unauthorized marketing text messages. The parties negotiated a settlement on behalf of Plaintiff and a class of approximately 1,861,929 consumers who were called and sent text messages by Defendant.  On November 27, 2019, the Court granted Preliminary Approval of the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. See ECF #57. On December 2, 2019, the Court issued a corrected order preliminarily approving class settlement.  See ECF #57.  Plaintiffs and Class Counsel now seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and reimbursement of attorneys' fees for Class Counsel.

**I.      INTRODUCTION**

Plaintiffs each filed cases against Defendant at different times and in different courts for violations of the Telephone Consumer Protection Act ("TCPA"). A Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, and extensive arm's-

length negotiations cut across a multitude of lawsuits filed in different jurisdictions, before they were ultimately consolidated in this this Action.

On November 13, 2017 all parties attended a full day classwide Mediation before Hunter R. Hughes. At the end of said mediaton, Plaintiffs were under the belief that a class wide settlement had in fact been reached pusuant to a term sheet drafted at the Mediation. Defendant, however, disagreed that a full settlement had in fact been reached and all cases continued through the litigation path until April 13, 2018, when Plaintiffs filed a Motion to enforce the settlement allegedly reached at the initial Mediation. This Motion was filed on behalf of all parties by Plaintiff Elser in the middle District of Florida, Case 5:17-cv-00326-BJD-PRL.

Before the Court in Elser issued a final Ruling on Plaintiffs' Motion to Enforce Settlement, all parties attended a second Full Day Mediation with the Hon. Jay C. Ghandi (Ret.) of JAMS on December 14, 2018. After a few more months of intense negotiations, all parties finally agreed to a class wide settlement and fully executed a term sheet reflecting the same on March 29, 2019. Fnally, on April 8, 2019, all Plaintiffs filed a consolidated complaint before this Honorable Court [Dckt. 21], in order to effecuate settlement and have this Court hold jurisdiction over the settlement and all cases involved therein. The settlement requires Defendant to make available up to $11,450,863 in cash for the benefit of the class. *See* Settlement Agreement and Release ("Agreement" or "Settlement"), [ECF No. 24-1].[1]

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiffs as Class Representatives; (4) appoint as Class Counsel the attorneys listed in paragraph I.I. of the Agreement; (5) approve the Plaintiffs' requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.    MOTION FOR FINAL APPROVAL

### A.    Procedural History

On October 23, 2018, Plaintiff Marcelo Pena filed litigation against Defendant before this Honorable Court, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages.

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

Defendant filed its answer on November 14, 2018 and this case was referred to mediation by order of December 28, 2018. Plaintiff Pena is being represented by Andrew Shamis of Shamis & Gentile, P.A. and Manuel S. Hiraldo of Hiraldo, P.A.

On May 12, 2017, Plaintiff Frank Eisenband filed litigaion against Defendant in the United States District Court District of New Jersey, Case Number 3:2017cv03404, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. Defendant filed its answer on June 9, 2017. Plaintiff Eisenband is being represented by Stephen DeNittis and Ross Schmierer of DeNittis Osefchen Prince, P.C.

On May 26, 2017, Plaintiff James Lebowitz filed litigation against Defendant in the United States Court District of Massachussets, Case number 1:17-cv-10973-RGS, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. This case was transferred to the District of New Jersey on April 30, 2018. Plaintiff Lebowitz is being represented by Abbas Kazerounian of Kazerouni Law Group, and Stephen DeNittis and Ross Schmierer of DeNittis Osefchen Prince, P.C .

On June 1, 2017, Plaintiff Craig Cunningham filed litigation against Defendant in the United States Court District of Utah, Case 1:2017cv00087, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. Plaintiff Cunningham is being represented by Todd Friedman of the Law Offices of Todd M. Friedman, P.C.

On July 12, 2017, Plaintiff Joshua Elser filed litigation against Defendant in the United States Court Middle District of Florida, Case 5:17-cv-00326-BJD-PRL, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. Defendant filed its answer on September 11, 2017. Plaintiff Elser is being represented by Andrew Shamis of Shamis & Gentile, P.A. and Manuel S. Hiraldo of Hiraldo, P.A.

The parties litigated this action through the pleadings stage, party and non-party discovery, class certification, mediation, and post-mediation negotiations. On April 8, 2019, Plaintiffs filed their First Amended Complaint ("FAC") in the United States District Court for the Southern District of Florida in an attempt to consolidate all of the actions at issue. The FAC alleged that Defendant improperly called Plaintiffs and sent text messages to Plaintiffs in violation of the TCPA. [ECF No. 22]. Plaintiffs alleged that they and members of the class received calls and text messages from Defendant without prior express written consent, which harmed them and the class.

### B.    Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached.   The following is a summary of its material terms.

### 1.    *The Settlement Class*

The Settlement Classes are opt-in classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> **CLASS 1**: All persons in the United States: (1) who received a telephone call and/or text message from July 12, 2013 to the date of preliminary approval based on the information gathered by one or more of the following third-party lead generators- RTK Media, Inc., Capital Leads LLC, Fluent, LLC and Credit Sesame, and (2) the telephone call or text message (1) resulted in a telephone conversation with a representative of Lexington or a text message that referenced "Lexington Law."

> **CLASS 2**: All persons in the United States: (1) who had a telephone conversation with a representative of Lexington, from July 12, 2013 to the date of preliminary approval, wherein the Lexington Representative obtained a copy of such person's credit report, (2) who did not sign up for Lexington's credit repair services on that phone call, and (3) who did not opt-out of receiving text messages from Lexington.

Exhibit 3 to Agreement. Excluded from the Settlement Class are: (i) the district judge and magistrate judge presiding over this case, their spouses, and persons within the third degree of relationship to either of them; (2) individuals who are or were during the Class Period agents, directors, employees, officers, or servants of Lexington or of any affiliate or parent of Lexington; (3) Plaintiff's counsel and their employees, and (4) all persons who file a timely and proper request to be excluded from the Settlement Class.

### 2.    *Monetary Relief*

The Settlement requires Defendant to make available up to $11,450,863 for the benefit of the Settlement Class.  In order to receive a portion of the Settlement Fund, Settlement Class members are required to complete a simple Claim Form. Each Settlement Class Member who timely files a valid Claim Form shall become a Settlement Class Claimant and thereafter automatically receive a Settlement Fund Payment payable by check.

Each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check of up to $6.15 (less any Notice and Administration Costs, Attorneys' Fees and Expenses, and Service Award.  Settlement

Class Claimants will be sent their Claim Settlement Payments to the address they submitted on their Claim Form within 30 days following the Effective Date. Agreement at IV.F.1.

### 3. *Class Release*

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Action. The detailed release language is found in Section VII of the Agreement.

### 4. *Settlement Notice*

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Manuel Hiraldo ("Hiraldo Decl.") at ¶2. The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### 5. *Service Award*

Class Counsel are entitled to request, and Defendant will not oppose, a Service Award of $2,500 for each Class Representative. Agreement at VI. If the Court approves it, the Service Award will be paid from the Settlement Fund. *Id.* The Service Award will compensate Class Representatives for their time and effort in the Action, and for the risks he undertook in prosecuting the Action against Defendant.

### 6. *Attorneys' Fees and Costs*

Class Counsel are entitled to request, and Defendant will not oppose, attorneys' fees of up to $1,450,000. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. Hiraldo Decl. ¶3.

### C. <u>Argument</u>

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re*

*Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).   In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"   *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources.   Therefore, "federal courts naturally favor the settlement of class action litigation."   *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> **1.** ***Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.***

The Notice Program consisted of: (1) an "Email Notice" to each Settlement Class member for whom Defendant has an address; (2) a "Postcard Notice" for persons in the Settlement Classes for which email is not available; and (3) a "Publication" notice, which consists of producing and placing internet banners and purchasing 13,316,000 advertisement views targeting Adults 18+ on desktop and mobile devices via the Google Display Network. *See* Declaration of Deborah McComb, ("McComb Decl."), at ¶¶6-7.

Each facet of the Notice Program was timely and properly accomplished. The Notice Administrator received data from Defendant and identified a combination of names and/or email addresses for 2,358,503[2] Settlement Class Members and sent those Members the Email Notice. The Notice Administrator also placed internet banners and made 13,354,277 impressions total.

The   Notice   Administrator   also   established   the   Settlement   Website, http://www.lexlawtcpasettlement.com/, which went live on January 10, 2020.  McComb Decl. ¶8.  The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id.*  In addition, a toll-free number was also established on January 10, 2020.  McComb Decl. ¶9. By calling, Settlement Class members are able listen to answers to frequently asked questions and   request   a   copy   of   the   Long   Form   Notice.   Finally,   the   Publication   Notice   has   been

---

[2] After Plaintiffs' Motion for Preliminary Approval was filed, the class size increased based on the amount of consumers that were called by Defendant between the Motion for Preliminary Approval and the Order Granting the Motion for Preliminary Approval.

promulgated via placing internet banners in which 13,354,277 impressions were made in total. McComb Decl. ¶7.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of $1,450,000 of the Settlement Fund, and a Service Award of $2,500 for each of the Class Representatives.  Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of February 26, 2020, the Settlement Administrator had received one request for exclusion and ***no objections*** to the Settlement had been filed.  Exhibit F to McComb Decl.  The opt-out and objection period ends on February 26, 2020.

**2.    *The Settlement Should Be Approved as Fair, Adequate and Reasonable.***

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they

might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1)     the existence of fraud or collusion behind the settlement;

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the probability of the plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a.     There Was No Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in negotiations leading up to and after multiple mediations, and resolved the case after several months of post-mediation negotiations. All negotiations were arm's-length and extensive. S*ee Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); Hiraldo Decl. ¶4.

### b.     The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an

atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c. The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted party and non-party discovery and motion practice. Hiraldo Decl. ¶5. Specifically, Class Counsel reviewed numerous pages of documents and electronic data. Plaintiff also spent considerable time researching and briefing Defendant's numerous defenses. Class Counsel also filed an Opposition to Defendant's Motion to Stay, a Motion for Class Certification, and an Opposition to Rosales' Motion to Intervene and Stay. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate with the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis. Hiraldo Decl. ¶6.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314. Class Counsel believes that Plaintiffs had a strong case against Defendant. Hiraldo Decl. ¶7. Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. *Id*. This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, class certification, trial, as well as appellate review following a verdict. *Id*. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Hiraldo Decl. ¶8. The uncertainties and delays from this process would have been significant. *Id*.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g*., *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### e. The Benefits Provided by the Settlement are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them. Hiraldo Decl. ¶9. Each Settlement Class Claimant who opted to participate in the settlement will receive $6.15 (less any Notice and Administration Costs, Attorneys' Fees and Expenses, and Service Award). Settlement Class Members can continue to submit Claim Forms up and through May 4, 2020. Pursuant to the TCPA, each injured Settlement Class member could have received $500.00 for

each violative message and call received upon a successful verdict at trial, but such a result was very uncertain.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Hiraldo Decl. ¶10. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 U.S. Dist. LEXIS 23869, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member).

**f.      Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.**

Class Counsel strongly endorse the Settlement. Hiraldo Decl. ¶11.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.  '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement, as not a single objection was filed to date. McComb Decl. ¶10. This is another indication that the Settlement Class is clearly satisfied with the Settlement.  Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

**3.      *The Court Should Certify the Settlement Class*.**

Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The settlement meets all the hallmarks of an appropriate Rule 23 class.

**a.      Certification under Rule 23(a) and (b)(3)**

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.  For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 2,358,503 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Defendant's calls and text messaging program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory").  Plaintiffs are typical of absent Settlement Class members because they received a call and/or text message and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Hiraldo Decl. ¶4.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Plaintiffs readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Court should approve the Settlement as fair, adequate and reasonable.

## III.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for each of the Class Representatives in the amount of $2,500. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred

during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiffs. Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information to Defendant's formal discovery requests. Hiraldo Decl. ¶13.

The Service Award of $2,500 each is less than 0.03% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *See, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement). The Service Award requested here is reasonable.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $1,450,000. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A.    The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine

14

is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."  *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333.  Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017) (same).

The Court has discretion in determining the appropriate fee percentage.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)     the time and labor required;

(2)     the novelty and difficulty of the relevant questions;

(3)     the skill required to properly carry out the legal services;

(4)     the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5)     the customary fee;

(6)     whether the fee is fixed or contingent;

(7)     time limitations imposed by the clients or the circumstances;

(8)     the results obtained, including the amount recovered for the Clients;

(9)     the experience, reputation, and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)    the nature and the length of the professional relationship with the clients; and

(12)    fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1.     *The Claims Against Defendant Required Substantial Time and Labor*.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Hiraldo Decl. ¶15. Class Counsel devoted substantial time to investigating the claims against Defendant and litigating the case. Hiraldo Decl. ¶16. Time and

16

resources were also dedicated to conducting formal party and non-party discovery, motion practice, and mediation. Hiraldo Decl. ¶18.

Settlement negotiations consumed further time and resources. Hiraldo Decl. ¶19. The mediation sessions required substantial preparation and document review. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order including successfully defending Rosales' Motion to Stay and Intervene. All of this work consumed a substantial amount of time. All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Hiraldo Decl. ¶20. The time and resources devoted to this Action readily justify the requested fee.

### 2. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues and whether an ATDS was used, as defined by the TCPA. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Hiraldo Decl. ¶21. The record demonstrates that the Action involved complex and novel challenges, which Class Counsel met at every juncture. *Id.* at ¶26.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. Defendant's counsel was a worthy, highly competent adversary. Hiraldo Decl. ¶22; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense

17

counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3.    *Class Counsel Achieved a Successful Result.*

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result.  Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit of $6.15. Hiraldo Decl. ¶23.

### 4.    *The Claims Presented Serious Risk.*

The Settlement is particularly noteworthy given the combined litigation risks.  Hiraldo Decl. ¶24. As discussed, Defendant raised substantial and meritorious defenses. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Hiraldo Decl. ¶25. Defendant was confident in their opposition to Plaintiff's claims. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Hiraldo Decl. ¶26.

> **5.      *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis*.**

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Hiraldo Decl. ¶27. That risk warrants an appropriate fee.  Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees."  *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee.  Hiraldo Decl. ¶28.  The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. Hiraldo Decl. ¶29.  There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

> **6.      *The Requested Fee Comports with Fees Awarded in Similar Cases*.**

Counsel's requested fee of $1,450,000 of the Settlement Fund is well within the range of fees typically awarded in similar cases. Hiraldo Decl. ¶30.  This fee represents 12.6% of the available relief of $11,450,863.  Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I. See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery.  *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268

(S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases").   And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers.   In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, the attorneys' fee requested here, which is well below the cases cited about, is appropriate and should be awarded.

## V.    CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiffs as Class Representatives; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph I.I. of the Agreement; (5) approve the requested Service Award in the amount of $2,500 for each Class Representative; (6) award Class Counsel attorneys' fees in the amount of $1,450,000; and (7) enter Final Judgment dismissing the Action with prejudice.

## <u>CERTIFICATE OF GOOD FAITH CONFERRAL</u>

The undersigned attorney, in compliance with S.D. Local Rule 7.1(a)(3), certifies that the movant has conferred with counsel for Defendant, and that Defendant does <u>not</u> oppose the motion.

Dated: February 26, 2020

Respectfully submitted,

**EDELSBERG LAW, PA**
/s/ Scott Edelsberg
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
(t) 954.400.4713

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(t) (305) 479-2299
(f) (786) 623-0915

**KAZEROUNI LAW GROUP**
Abbas Kazerounian, Esq. (Admitted Pro Hac Vice)
ak@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**Denittis Osefchen Prince**
Ross H. Schmierer
Five Greentree Centre, Suite 410
525 Route 73 N.
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978